IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

WILLIE EARL C., )
 )
        PLAINTIFF, )
 )
vs. ) CASE NO. 18-CV-272-FHM
 )
Andrew M. Saul,[1] Commissioner of )
Social Security, )
 )
        Defendant. )

**OPINION AND ORDER**

Plaintiff, WILLIE EARL C., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective June 17, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Willie Earl C.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Deirdre O. Dexter was held April 10, 2017. By decision dated June 15, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on March 16, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 43 years old on the alleged date of onset of disability and 47 years old on the date of the denial decision. He has a high school education and past relevant work includes an electrician. [R. 21]. Plaintiff claims to have been unable to work since December 20, 2013 due to nerve damage in each arm; big knot on left wrist; screws, steel, and metal in neck and back; high blood pressure, high cholesterol; severe pain; six spurs in back; back fusion six times; degenerative disc disease; and unable to turn neck from side to side. [R. 178].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease; obesity, carpal tunnel syndrome, and paroxysmal supraventricular tachycardia. [R. 19]. The ALJ determined that the Plaintiff has the residual functional capacity to perform sedentary work in that Plaintiff is able to lift, carry, push or pull up to 5 pounds frequently and 10 pounds occasionally. He is able to sit for up to 6 hours in an 8-hour workday; able to stand and/or walk up to 2 hours in an 8-hour workday. Plaintiff should have the option to stand for 10 minutes after 30 minutes of sitting without leaving the workstation. The job should not require standing or walking for more than 20 minutes consecutively. Plaintiff should have the option to use a cane to ambulate. Plaintiff is able to occasionally climb ramps or stairs, and occasionally stoop. Plaintiff should never climb ladders, ropes, or scaffolds, and he should not kneel, crouch, or crawl. Plaintiff is able to frequently reach, handle, or finger. The job should provide regular breaks every 2 hours. [R. 20]. The ALJ determined that Plaintiff was unable to perform his past relevant work, however, based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 26-27]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly develop the record; 2) the RFC assessment is erroneous; 3) credibility findings are not supported by substantial evidence; 4) erred in failing to develop vocational expert witness testimony; and 5) the decision in this case was rendered by an Administrative Law Judge whose appointment was invalid at the time she rendered her decision. [Dkt. 12, p. 3].

## Analysis

### Development of the Record

Plaintiff contends that the ALJ erred in failing to incorporate and consider the extensive evidence from the Plaintiff's first two Applications. [Dkt. 12, p. 4]. The ALJ specifically addressed the evidence in the case at the hearing:

> ALJ: Do you have any objection to any of the documents marked as exhibits in this case?
> ATTY: I have no objection.
> ALJ: Do you have any additional evidence to submit either at this time or post-hearing?
> ATTY: No.

Plaintiff's allegations that the ALJ failed to properly develop the record is denied.

### Residual Functional Capacity

Plaintiff argues that the ALJ's RFC assessment is erroneous because it was based on a record that was not fully and fairly developed, thus not based on substantial evidence. Further, the RFC assessment appears to be "boilerplate" statements. [Dkt. 12, p. 6]. Plaintiff contends that the ALJ's finding that he can frequently reach, handle, or finger is in error because objective medical tests show he has carpal tunnel syndrome and radiculopathy. [Dkt. 12, p. 7; R. 283-285]. The determination of RFC is an administrative

4

assessment, based upon all of the evidence of how the claimant's impairments and related symptoms affect his ability to perform work related activities. See Social Security Ruling (*SSR*) 96-5p, 1996 WL 374183, at *2, *5. The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ. See 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

Contrary to Plaintiff's argument, the court has denied Plaintiff's allegation that the ALJ failed to properly develop the record. Further, the ALJ accurately discussed the medical record noting the EMG testing showed only mild carpal tunnel syndrome in right arm and mild radiculopathy in his left arm, both without motor axonal loss. [R. 25, 283]. Examinations revealed Plaintiff had full 5/5 muscle strength, including full strength in hand and arms. [R. 25-26, 273, 177-79, 331]. Plaintiff testified he could lift 5 pounds but indicated in his Functional Report that he was restricted to 25 pounds. [R. 21, 26; 198]. The ALJ determined Plaintiff was capable of performing reduced sedentary work. The RFC limitation to frequent reaching, handling, or fingering reasonably addressed Plaintiff's alleged limitations in the use of his hands and arms. [R. 20, 25, 273, 277-79, 283, 331].

The ALJ properly focused on the functional consequences of Plaintiff's condition and accurately described the doctors' findings. See e.g. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question

5

is whether an impairment significantly limits the ability to work), *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250* (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Moreover, DDS physicians, David Coffman, M.D. and David McCarty, M.D., both opined Plaintiff could perform light work. [R. 26, 65-66, 75-76]. Thus, the ALJ gave Plaintiff the benefit of the doubt by issuing a more favorable RFC assessment than was suggested by these physicians.

Further, the court disagrees with Plaintiff that the ALJ's findings were 'boilerplate'. The ALJ noted Plaintiff's testimony, accurately discussed the medical and other evidence, and explained her finding that Plaintiff was not as limited as he claimed. The ALJ gave valid reasons for her findings and they were adequately linked to substantial evidence contained within the record. [R. 21-26]. Accordingly, the court sees no error in the ALJ's residual functional capacity determination.

## Credibility

Plaintiff argues the ALJ's decision does not contain a sufficient credibility analysis because the ALJ failed to consider all the factors that the regulations require her to consider. Plaintiff contends the ALJ did not properly link her credibility findings to the evidence of the case and failed to consider the following pain credibility requirements: location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; treatment, other than medication, Plaintiff receives or has received for relief of pain or other symptoms (sleeping in recliner) and any other factors concerning Plaintiff's functional

6

limitations and restrictions due to pain or other symptoms. The ALJ also failed to consider Plaintiff's strong work history. [Dkt. 12, p. 7-11].

Although the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process: First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . . Soc. Sec. Ruling (*SSR*) 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding *SSR* 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).

At step one of the process, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a

claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citations omitted); see 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citations omitted).

The ALJ cited numerous grounds, tied to the evidence, for the credibility finding including Plaintiff reported concentration problems due to pain. However, prior to Plaintiff's date last insured, he rated his pain as 2/10 and well controlled. Treatment records reflect Plaintiff was alert and demonstrated appropriate judgment, insight, train of thought, and memory for the situation at all of his appointments, even when he rated his pain as 7/10. Plaintiff consistently was alert, oriented times three, and followed three-step commands. [R. 26]. Plaintiff alleged he was unable to drive because he could not turn his head, however, his Spurling test was negative, and the EMG showed only mild carpal tunnel syndrome in right arm and mild radiculopathy in his left arm, both without motor axonal loss. [R. 25, 283]. Further, Plaintiff's activities of daily living included performing chores, reading, driving, shopping, and handling his own finances. [R. 25-26- 200-02]. The ALJ found Plaintiff's subjective statements about intensity, persistence, and limiting effects of his

8

symptoms were not entirely consistent with medical and other evidence. [R. 26]. The ALJ thus properly linked her credibility finding to the record. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

Hypothetical Question to the Vocational Expert

Plaintiff argues that the ALJ's hypothetical question presented to the vocational expert did not reflect Plaintiff's "true physical residual functional capacity," particularly his widespread pain, fatigue, and the carpal tunnel syndrome that impairs his ability to finger, feel, and handle. [Dkt. 12, 11-12]. Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

The hypothetical question posed to the vocational expert was not deficient. As this court has decided, the ALJ's RFC assessment was based on the substantial evidence of record. The hypothetical question posed by the ALJ to the vocational expert was appropriately based on the RFC assessment. Thus, this court finds that the ALJ's reliance on the vocational expert's testimony was proper.

Appointments Clause Claim

Plaintiff argues that the ALJ who decided his case was not appointed in compliance with the Appointments Clause of the Constitution.[3] The Commissioner does not dispute that the ALJ was not constitutionally appointed[4] but argues that the court should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on his claim for benefits. To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process. Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed. The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[5] These cases rely on

---

[3] The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." U. S. Const. art. II ,§2, cl. 2. It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." *Id*.

[4] For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers. [Dkt. 14, p. 7].

[5] *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Commn'r Soc. Sec.*, 2018 WL 6059403 (W.D.

the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency. They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. 138 S.Ct. at 2055. These cases find that the Social Security claimant, having not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge. The Commissioner's brief relies on similar arguments.[6]

A small number of cases rely on the Court's analysis in *Sims v. Apfel,* 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments Clause issue was not forfeited.[7] In *Sims* the Supreme Court concluded that Social Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. In

---

Tenn. Nov. 19, 2018)(challenge under Appointments Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

[6] The Commissioner also cites five regulations it contends supports requiring issue exhaustion. None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

[7] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), Ready *v. Berryhill*, 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred).

reaching this conclusion, the Court considered the following factors.[8] First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration. Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion. Third, the reasons why courts generally impose issue exhaustion requirements do not apply to the non-adversarial process of the Social Security Administration. Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement. *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process. The statute still does not require issue exhaustion. In the 19 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion. The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

---

[8] The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

The court finds that at the time the decision in this case was entered, June 15, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution. The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security Administration. As a result, the ALJ's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 26th day of June, 2019.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE